148    JOHN C. JONES *versus* BOSTON MILL CORPORA
TION.

Where a question of boundaries was submitted by the plaintiff and defendants to arbi-
trators, who awarded that the plaintiff had a title to the land as far as a certain
line, and that the defendants, who were in possession, should give him a release of
the same, it was *held* to be no objection to the validity of the award, that it did not
direct the plaintiff to give the defendants a release of the land on the other side of
the line.

Where it manifestly appears by the submission, that the parties intended to leave the
whole matter, law and fact, to the decision of the arbitrators, the award is conclu-
sive, although they should have mistaken the law, unless the award itself refers the
point to the consideration of the court.

THIS was a bill in equity to compel the specific perform
ance of an award.

The bill sets forth, that on the 4th of April, 1826, the plaintiff claiming to be the proprietor of land in Boston, bounding southwesterly on the ancient mill creek, so called, and also of the soil in the creek in front of his land over to the ancient causeway, lately one of the bounds of the mill pond, and the defendants claiming to own the soil of the creek, they made an agreement in writing under seal, whereby they submitted to the award of Lemuel Shaw, Samuel Hoar, jun. and William Sturgis, all matters in controversy in the premises, and that the arbitrators should award the limits and boundaries

---

[2] See 2 Phillips on Ins. 382, 383.

[3] See *Bryant* v. *Commonwealth Ins. Co.* 13 Pick. 543.

between their estates, and cause a plan to be made, if they should see fit, in conformity to their award, to make such boundaries certain, and the parties mutually covenanted to abide by the award and to execute any deeds of release necessary and proper to give effect to the same ; that on the 8th of June following, the arbitrators heard the parties, and fully considered their respective allegations, proofs and arguments upon the whole matters submitted, and thereupon awarded that the plaintiff has a good right and lawful title to the land, formerly flats, in front of a wharf conveyed to him in 1814, and that his land extends southwesterly between two certain lines to a line forming the base of the old mill dam on the outward or northeasterly side thereof, according to a plan annexed to the award ; that they further awarded, that the defendants should within thirty days after the publication of the award, make, execute and deliver to the plaintiff, his heirs and assigns, a quitclaim deed to every part of the premises so awarded to him ; that on the same 8th of June the arbitrators duly published their award ; yet the defendants, though specially requested after the expiration of the thirty days, never executed and delivered to the plaintiff a quitclaim deed : — and the prayer of the bill is, that the defendants may be compelled to execute and deliver such a deed.

The defendants, in their answer, say, that although in the preamble to the agreement between the parties, set forth in the bill, it is recited that the plaintiff claimed to be owner of the soil in the creek in front of his land over to the ancient causeway, yet they deny that at any time prior to the award, they had any reason to suppose that he seriously pretended or meant to claim the soil in the creek between his land and the causeway, except the part lying eastwardly of a channel running through the creek, contiguous to his land ; that they thought he always admitted their title to the land on the west side of the channel, and that they were confirmed therein by letters from him, and that they considered that the only controversy between the parties related to damages for obstructing the water-course, and the right to the soil east of the channel ; that the words, " over to the ancient causeway," in the

13 *

recital, were intended by them as descriptive of the creek, and not of the boundaries of the land claimed by the plaintiff.

They further say, that the claim of the plaintiff, so far as it was supported on the ground of the law which gives to the proprietors of upland the property in contiguous flats, and of extending the low-water mark beyond the channel above mentioned, was new to their counsel and unknown and unexpected by themselves, and that had they known of such claim, they could have found and produced before the arbitrators conclusive evidence to rebut it.

Further, that, as they are informed, the arbitrators adopted it as a principle and foundation of their award, that by the discontinuance of the use of the creek as a highway, (the soil thereof being vested in the owner of the contiguous upland,) the plaintiff became entitled to the land awarded to him, in virtue of the law by which the upland carries the flats, when even on this principle a part of the land awarded to him would belong to the defendants as proprietors of land adjacent to the plaintiff's.

They admit that the award would be binding as to the land east of the channel, if that had been ascertained by the award; but in regard to land west of the channel they were taken by surprise, and their counsel were obliged to proceed without sufficient instructions or evidence, and induced to treat as a subordinate question, what was regarded by the arbitrators·as a principal question.

They say that the arbitrators mistook the law in awarding to the plaintiff all the flats west of the upland, so as to make the same commensurate with the external lines of his upland, when in fact a proportion only of such flats could have reverted to him by the discontinuance of the use of the creek as a highway.

They also deny that the award is mutual and comformable to the agreement. They say that the claim of the plaintiff, according to his construction of the agreement, extended to the ancient causeway, but the land awarded extends only to the base of the causeway, between which and the causeway itself is a space of eighteen feet, which was comprehended in the plaintiff's claim, but which, as may be inferred from

tne award, was regarded by the arbitrators as the property of the defendants ; and, therefore, when the arbitrators awarded that the defendants should release to the plaintiff their claim to the soil of the creek as far west as the line forming the base of the old causeway, they ought also to have awarded that he should release to them his claim to the land (comprehended in the terms of the agreement) westward of the base line.

The plaintiff filed a general replication.

The depositions of Mr. Shaw and Mr. Sturgis were in the case. Mr. Shaw stated, that it was a subject of discussion before the referees, whether the plaintiff had a right to the flats lying in front of the upland claimed by him, and what was the extent of that right ; and as the causeway, or a part of it, lay in front of the estate, and far within the distance of 100 rods, the discussion embraced the question, whether he had a right to the flats up to the causeway. He claimed them to that extent, and the claim was resisted by the defendants. Much evidence was given on both sides, and the defendants were fully heard on the subject, as well in regard to the law as the facts, and they did not express a wish for further time to be heard upon any question discussed. The hearing occupied three days. The referees adopted as a principle, that the plaintiff, in virtue of his being owner of the upland in question, and by force of the colony law of 1641, or of the ancient rules and usages of the Commonwealth which probably originated in that law, and which they considered to be adopted as rules of law, was entitled to the flats in front of his estate over which the sea ebbed and flowed, as appurtenant to the upland, although there was no channel in that direction, or line which might be denominated or considered as the line of low-water mark. The witness was of opinion, upon the whole case as then presented, that the plaintiff was entitled to the flats awarded him, as appurtenant to his wharf and upland, upon the ground before mentioned. The testimony of Mr. Sturgis was in accordance with that of Mr. Shaw.

*J. Pickering* and *Minot*, for the defendants. The decisions in England, that where the objections to an award do not appear on the face of it, the court cannot go behind it, have been influenced by the statute of 9 and 10 *Will.* 3, *c.* 15, (which

Jones
v.
Boston Mill
Corpora-
tion.

has not been adopted here,) and do not rest solely upon the common law. The result of the more recent cases seems to be, that where there has been a mistake of the arbitrators, in matter either of law or of fact, and whether appearing on the face of the award or by extrinsic evidence, the court, in the exercise of a sound discretion, will give relief, if injustice has been done. *Kent* v. *Elstob*, 3 East, 18 ; *Ainslie* v. *Goff*, Kyd on Awards, 351 ; *Aubert* v. *Maze*, 2 Bos. & Pul. 375 ; *Nichols* v. *Chalie*, 14 Ves. 271 ; *Morgan* v. *Mather*, 2 Ves. jun. 18 ; *Seymour* v. *Seymour*, 4 Johns. Ch. R. 405 ; *Chace* v. *Westmore*, 13 East, 358 ; Tidd's Pr. 763 ; *Williams* v. *Craig*, 1 Dallas, 315. Then is there sufficient ground for the Court to interpose in the present instance ? It appears that the arbitrators adopted the rule stated in the defendants' answer and in the testimony of the arbitrators, namely, that the flats in front of the plaintiff's upland, on the west side of the creek, belonged to him by virtue of the colony ordinance of 1641, notwithstanding there was no low-water mark in that direction ; and in this it is apprehended they mistook the law

Another objection to the award arises from the want of mu tuality. As the plaintiff's claim to a part of the land in con troversy was disallowed, the arbitrators should have directed mutual releases.

*Sullivan* and *Nichols*, *contra*. It is not competent for the defendants to take advantage of a mistake made by the arbitrators in matter of law, unless the mistake appears on the face of the award. This was a submission to settle boundaries, presenting a complicated question of law and fact, and if the arbitrators have mistaken in a doubtful point of law, as they were judges of the parties' own choosing, the Court will not set aside their award. No suggestion has been made that they exceeded their powers, or that they were guilty of any misconduct. *Ridout* v. *Pain*, 3 Atk. 494 ; *Jackson* v. *Ambler*, 14 Johns. R. 105 ; *Herrick* v. *Blair*, 1 Johns. Ch. R. 102 ; *Morris* v. *Ross*, 2 Hen. & Munf. 408, 413 ; *Perkins* v. *Wing*, 10 Johns. R. 143 ; *Ching* v. *Ching*. 6 Ves. 282 ; *Steff* v. *Andrews*, 2 Mad. R. 6 ; *Wood* v. *Griffith*, 1 Swanst. 55 ; *Kleine* v. *Catara*, 2 Gallison, 69 ; *Goodman* v. *Sayers*, 2 Jac. & Walk. 255 ; *Taylor's Adm'r*. v. *Nicholson*, 1 Hen

& Munf. 69 ; *Morgan* v. *Mather*, 2 Ves. jun. 15 ; *Dick* v.
*Milligan*, ibid. 24.

As to the want of mutuality, we say that the arbitrators
have awarded to the plaintiff all the land which he claimed,
and so a release from him was not necessary ; but supposing
that they have not, the plaintiff, by taking a release describing
his land as bounding on that of the defendants, will be estopped
to claim any further, and so the award is mutual. It is not
essential that the mutuality should appear on the face of the
award.   Caldwell on Arbitr. 113 ; Kyd on Awards, 218 to
228, and 259 to 261.

PARKER C. J. delivered the opinion of the Court.   On a
former hearing of this case on demurrer to the bill, founded on
a supposed want of jurisdiction in the Court or power to de-
cree specific execution of the award, the demurrer was over-
ruled, and the defendants were ordered to make answer to the
bill.   [See 4 Pick. 507.]   An answer having been filed, to
which there have been no exceptions, the case has been argued
upon the general question, whether any thing contained in the
answer is sufficient to show that the award is bad in law, or
whether on any grounds of equity the defendants ought to be
relieved from its effects.

It has been urged, that the award is bad in itself, in not
being mutual, that is, in not providing that a release should be
given by the plaintiff to the defendants, of land supposed to be
contained in the description of land claimed by the plaintiff,
but not confirmed to him by the award ; a release being re-
quired from the defendants of all the residue of the land within
his claim.   We do not find it essential to the validity of an
award, that releases should be required on both sides, if the
title is so ascertained by the award itself, as to leave no room
for disputation.   By the submission, authority was given to the
arbitrators to require such deeds of release as should be neces·
sary and proper to give effect to the award.   The arbitrators
awarded a release from the defendants to the plaintiff, of the
land which they determined the plaintiff ought to hold, and this
was proper, as the defendants were in possession claiming
title ; and though, without a release, the award would have
been conclusive between the parties as to the extent of their

Jones
*v.*
Boston Mill
Corpora-
tion.

153
*March 29th.*

ones
v.
Boston Mill
Corpora-
tion.

several claims, it was more convenient that the claims and pos-
session of the defendants should be extinguished by a deed of
release, which of course, when duly executed and delivered,
would admit of no dispute.    Perhaps it would have been bet-
ter to require a release from the plaintiff to the defendants, of
all lands without the bounds ascertained by the award ; but as
the defendants were already in possession, claiming the land
under their general title as proprietors of the mill pond, a re-
lease was by no means essential to them.    The award itself
settles the limits of the plaintiff's claim, and there was no pos-
session or claim of right on his part beyond the boundary es-
tablished by the award ; so that there is no want of mutuality
in any thing in the least degree important to the parties.    And
it may be added, that if a release from the plaintiff to the de-
fendants were necessary, to carry into effect the award, as he
has covenanted to make and execute any deed of release which
may be necessary for that purpose, he might be compelled by
a bill to perform that covenant.    But a release was not neces-
sary to either party, for it is clear that the award itself would
establish the title.[1]   In *Shepherd* v. *Ryers*, 15 Johns. R.
497, it was held, that an award of land to one party estops the
other from setting up title to the land awarded ; and in *Sellick
et al.* v. *Addams*, *p.* 197 of same volume, it was held, that
when an award settles the boundary of land, the party to whom
it is awarded may maintain ejectment, or justify in trespass
brought by the other party.

   Another objection to the award is, that the arbitrators pro-
ceeded upon a mistaken construction of the right of the plain-
tiff to flats as appurtenant to his upland under the colonial ordi-
nance of 1641, and that for this cause the defendants ought to
be relieved from a specific execution.

   It is answered, on the part of the plaintiff, that an award
will not be set aside, or its execution superseded, on account

---

[1] See *Carey* v. *Wilcox*, 6 N. Hampsh. R. 179, 180, and cases there cited ;
*Byers* v. *Van Deusen*, 5 Wendell, 268; *Gould* v. *James*, 6 Cowen, 369; *Jack-
son* v. *Gager*, 5 Cowen, 383 ; *Cox* v. *Jagger*, 2 Cowen, 638; *Sellick* v.
*Adams*, 15 Johns. R. (2nd ed.) 200, note *a* ; *Robertson* v. *M'Niel*, 12 Wendell,
578 ; *Davis* v. *Havard*, 15 Serg. & Rawle, 166 ; *Shackleford* v. *Purket*, 2
Marshall, (Ken.) 439 ; *Page* v. *Foster*, 7 N. Hampsh. R. 395

of any supposed mistake of the arbitrators in matter of law, unless it appears by the award itself that it is defective in the point suggested.

There seems to be considerable contrariety of opinion in courts of law and equity upon this subject, and it is not easy to reconcile the opinions and reasonings of different judges thereon.

It was formerly held, that awards should not be set aside on account of any erroneous opinion in matter of law, unless the error appeared on the face of the award. But in *Kent* v. *Elstob*, 3 East, 18, there is a decision which greatly relaxes this rule. The arbitrator stated his reasons and delivered them on a separate paper to the parties. It was obvious that he meant to decide according to law, and was mistaken. The award was set aside on a rule, because the law was mistaken. *Lawrence* J. says it is not necessary that the arbitrator's reasons should appear on the face of the award, in order to enable the court to examine them. The reasons appearing on a separate paper were considered to be before the court, as much as if they had appeared on the award itself.

But in the case of *Chase* v. *Westmore*, 13 East, 357, very different ground is taken by Lord *Ellenborough*. The case, involving a question of law, was referred to a gentleman of the bar. There was a motion to set aside the award because he mistook the law. The question of law was raised in the pleadings, but did not appear on the face of the award, though it was brought before the court by affidavit. The chief justice said he " feared it was impossible to lay down any general and certain rule. It is enough to say, that in the present case, where the merits in law and in fact were referred to a person competent to decide upon both, we will not open the award, unless it could be shown to be so notoriously against justice and his duty as an arbitrator, that we could infer misconduct on his part." The other justices agreed, and *Le Blanc* J. said, when the question of law necessarily arises on the face of the award, then the court must take notice of it.

Now these two cases in the same court are quite contradictory, so that it will not be safe to take either of them for a guide.

By the decisions in chancery, it would seem to be considered as discretionary to set aside an award or not, on matter of law, according to what shall be deemed to be on the whole the justice of the case. Thus, if the arbitrators appear to be mistaken in a doubtful matter of law, the award may be permitted to stand, though the court after great deliberation should be of a different opinion from the arbitrator. Kyd on Awards, 351.

But the general rule in chancery seems to be, that awards may be set aside for matter in law, and it does not appear that it is necessary the error should appear on the award itself ; at least that is not stated to be requisite.

Thus in a note to the case in 14 Ves. 271, it is stated, that under a general reference, the mistake of the arbitrator, meaning to decide according to law, will be corrected ; but if parties refer a question of law to an arbitrator, meaning to have his decision, the court will not interfere. So in 9 Ves. 364. If they refer to a person to decide all matters in difference according to law, and the arbitrator means to decide according to law, and mistakes, the court will set this right. But if a distinct question of law, and nothing else, is referred, and the parties choose to say they will not take the decision of the court, but will take whatever an arbitrator shall say is the law, why may they not so agree ?

It is pretty clear then, that there is no definite rule on the subject in the English books, and yet there ought to be, and must be, some principle by which questions of this kind are to be settled. We take one principle to be very clear, which is, that where it manifestly appears by the submission, that the parties intended to leave the whole matter, law and fact, to the decision of arbitrators or referees, the award is conclusive, although they should have mistaken the law, unless the award itself refers such question to the consideration of the Court. And this is enough to settle the case before us ; for by the agreement to submit to arbitrators, all matters of law are expressly referred to the arbitrators in these words : — " It is agreed that the parties hereto may introduce any legal evidence in support of their respective rights and claims, and that the legal construction thereof is submitted to said referees." It is

not objected that any evidence not legal was admitted, and that is the only limitation to the authority of the arbitrators. They have given their construction upon all the evidence, and the parties cannot retract their agreement upon the allegation of a mistake. They selected a tribunal in all respects competent to decide a complicated case of law and facts ; and if their opinion on the matter in law should not be adopted by the court, their judgment is nevertheless to stand. The law on the point on which it is said they were mistaken, was, to say the least, very doubtful ; and upon that ground the award ought to stand, according to the doctrine cited from Kyd ; and their opinion is so far from being notoriously wrong, that it is highly probable one half of the profession would have given the same opinion, and so, according to Lord *Ellenborough*, in the case in 13 East, this forms no ground for setting aside the award. [1]

Another ground for resisting the decree, as set forth in the answer, is the alleged surprise of the defendants and their counsel, as to the importance attached to one of the subjects of discussion, so that they were not prepared to argue it as a principal matter in dispute. But we cannot listen to this complaint. A full and patient hearing was given ; the point referred to was raised and urged by the defendants' counsel ; if they were surprised, they should have applied for time. There was nothing urged which was beyond the subject matter of the arbitration. The claim of the plaintiff, as heard and decided upon by the referees, was according to his description in the submission ; for it extended over to the causeway. The defendants should not have been surprised at the attempt to enforce this claim to its extent ; and there is no extrinsic evidence from which we can perceive any intention to diminish his claim.

*Specific performance decreed.*[2]

---

[1] See 2 Story's Comm. Eq. 676 to 679; *Walker* v. *Sanborn*, 8 Greenl. 288 ; *Smith* v. *Thorndike*, 8 Greenl. 119; *Bigelow* v. *Newell*, 10 Pick. 355, 356.

[2] See 2 Story's Comm. Eq. 680 to 681.